## M. F. WINTERSMITH ET AL *v.* ALBERT GOODIN ET AL.

**Creditors Suit—Fraudulent Conveyance in Contemplation of Insolvency.**

In a suit to set aside a conveyance made by an insolvent, a creditor, who, from the nature of the conveyance, assisted in protecting himself and several other preferred creditors, by accepting the property and paying off the claims, merely substitutes himself to the rights of such creditors to the extent of his payments, with no right of priority over others in the subsequent distribution of assets.

**Equity—Right of Co-Owner to Improvements—Substitution of Creditors.**

Equity will give a co-owner a right in a partition proceeding, to the exclusive use of valuable and lasting improvements made thereon, and the creditors of such owner would be subrogated thereto.

**Same.**

This could not be defeated because the co-owner had used the whole interest, without payment of a rental. The other owners could only prove their claims in the proceeding, like other creditors.

**Dower and Curtsey—Sale Before Allottment.**

Before assignment of a widow's dower she has such an interest in her deceased husband's estate which is the subject of bargain and sale, like any other inchoate interest in realty.

**Same—Husband and Wife.**

The wife can pass such an interest by deed, and her creditors can have the dower allotted and subject same to their claims.

### APPEAL FROM LARUE CIRCUIT COURT.

### May 15, 1871.

OPINION OF THE COURT BY JUDGE LINDSAY:

The pretended sale of the personal property by Elizabeth and James Farleigh to Williams was properly located as a nulilty by the court below. It was an evident attempt upon the part of all concerned to invest the title to said property in Williams to enable him to hold for the benefit of his pretended vendors. It could not be regarded as a sale made for the purpose of preferring one creditor to the exclusion of others, but was rather an attempt to prevent the property from being subjected to the payment of

the claim of *any real creditor,* and it therefore did not come within the provisions of the act of 1856.

It is, however, clear from the record, that the sale of the farm to Goodin so far as Mrs. Farleigh and James were concerned was a sale made in contemplation of insolvency and for the purpose of preferring certain favored creditors. They were hopelessly insolvent at the time, and they both must necessarily have been aware of the existence of that fact. That they intended with the proceeds arising from the sale of their interests in said farm to pay in full the claims of a portion of their creditors to the total exclusion of the appellants, does not in our opinion admit of a doubt. Their vendee Goodin was permitted to retain out of the purchase price the full amount of his claim, and also so much as was necessary to indemnify him on acocunt of his suretyship to Johnson, and he was also directed to pay off several other creditors in full, and no provision whatever was made for the payment of any portion of the debts due to the appellants, all of which are admitted to be just. It is claimed by the appellee Goodin that notwithstanding this may be true, still he is entitled to be protected in his purchase at least to the extent of the payments made by him on the land, and that in any event he should be that far regarded as a preferred creditor. The case of *Whittaker v. Garnetl, &c., 3 Bush, 402,* is relied upon as sustaining this position. But there is a material difference between the attitude occupied by Whittaker and that of Goodin. The mortgage executed by Dean to Whittaker was in part to secure the repayment of money actually loaned at the time to enable him to continue in business, and whilst it appears that at the time of the execution of the mortgage Whittaker was apprised of Dean's financial difficulties, it does not appear that he knew that he contemplated insolvency, but we may assume that upon the contrary he was led to believe that with the money advanced by him upon the mortgage Dean would be able to meet his pressing liabilities and probably to extricate himself from his financial embarrassments. This assumption is strengthened by the fact that Dean was left in possession of all the mortgaged property, and continued in business until his creditors attacked the mortgage as fraudulent. With Goodin the case is entirely different; the sale to him divested his vendors of the control and possesion of their entire estate, and deprived them of the ability to continue in business. The payments to the pre-

ferred creditors which were partly made through him, exhausted more than one-half of the entire purchase price of the farm, and the co-tenants of Mrs. Elizabeth Farleigh and James, were entitled to receive more than two-thirds of the cash payment. They were thus left with but about two thousand dollars in available asse·-, with which to meet an indebtedness of not less than ten thousand. We feel satisfied from the record that Goodin knew the sale was made by Elizabeth and James Farleigh in contemplation of insol vency and to prefer creditors, and that he was fully aware that in case it was upheld by the courts, it would put it out of the power of the deferred creditors to realize anything whatever upon their claims. Such being the case he does not occupy the favorable position of a bona fide creditor free from all knowledge of, or participation in the act of bankruptcy committed by his vendors, but rather of a creditor seeking not only to secure himself, but to assist the failing debtors in their attempt to evade the legal effect of the statute of 1856, and to make an inhibitted distinction be- tween other creditors whose claims were equally meritorious. In his attempt to give this assistance he has merely succeeded in sub- stituting himself to the rights of those creditors whose claims he has paid, and of making himself the creditor of the bankrupts to the extent of his payments to them for their interests in the farm, with no right of priority over the appellants or any other creditor, in the distribution of their assets. With the conclusions of the circuit court upon this branch of the case we fully concur.

It seems that the court in its directions to the commisisoner appointed to allot to Goodin the four interests in one-half of the land which he takes under the conveyance from the four children who are not responsible for any part of the indebtedness of their mother and brother James, prescribes that in making such division they shall take into consideration quantity and quality. The effect of this is to make said four children equal participants in the valuable improvements shown to have been put upon the land by Mrs. Farleigh as we hold with her own individual means. In this we think the court erred.

Mrs. Farleigh being the owner in fee of an undivided one-half of the entire tract, had the right to enter upon and for her own benefit make valuable and lasting improvements thereon, and in a partition she should be entitled to have said improvements allotted to her without charge, and so likewise are her creditors. This

equitable rule is not to be defeated, because of the fact she has used and occupied the interests of her co-tenants without the payment of rent. She was not then trustee nor guardian, and if she owes them anything on that acocunt, they can prove their claims in this proceeding like other creditors. We are also of opinion that the court erred in adjuding that Mrs. Farleigh's right to have dower allotted her in the one-half of the tract owned by her deceased husband did not pass to her creditors under her conveyance to Goodin.

It is true that until the widow's dower has been assigned, she has no such estate in the lands of her former husband as can be taken and sold under execution, but even before assignment she possesses a claim which is the subject of bargain and sale, like any other inchoate interest in realty. This right passed by said conveyance, and her creditors can have her dower allotted and then subject that estate to the payment of their claims. We perceive no error in the judgment as to the claim in favor of Thomas, nor in any other respect except in so far as we have indicated in this opinion, but to that extent the judgment is reversed, and the cause remanded for further proceedings consitsent herewith. Upon the cross appeal the judgment is affirmed.

*Brown & Murray, Wintersmith, for appellant.*

*Johnson, Howell, for appellee.*